Welch, J.
The first question presented is, whether a majority of the county commissioners is a quorum to act under the law in question. We have no hesitation in answering this question in the affirmative. No reason is perceived why the legislature should intend any discrimination in this respect between the powers of the commissioners to be exercised in the location and establishment of . ditches, and those to be exercised in performing various other equally important *181 duties assigned to them by law. The location and establishment of roads, equally as of ditches, invoke the power of eminent domain, and it is conceded that in the former case a majority is sufficient. Nor is there anything in the language used by the legislature indicating an intention to make such discrimination. The act to establish boards of county commissioners (S. & C. 543, sec. 9) makes a “majority” of the board of county commissioners “ a quorum,” and authorizes them (sec. 1) to do and perform “ all such duties as now are, or hereafter may le, required of them.” The act in question confers the power to locate and establish ditches upon “ the county commissioners,” to be exercised “ at any regular or called session.” (S. & S. 313, sec. 1.) A quorum of the commissioners, when met and in session as such, is the board of county commissioners in law, equally as a quorum of the court or a quorum of the Senate or House of Representatives is in law the court, or the Senate, or the House of Representatives, and as such is authorized to do and perform any act. which the body might do and perform, were its members all present and participating. We see no validity in this objection to the proceedings.
The remaining question, which regards the plaintiffs’ constitutional right to compensation, and to its prepayment or security, is not so easy of solution. It is, in fact, a question of the constitutionality of the act.
The constitutional provision on the subject is as follows : “ Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war, or other public exigency imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public without charge, a compensation shall be made to the owner in money ; and in all other cases, when private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction ior benefits to any property of the owner.” (Sec. 19, article 1.)
The statute in question authorizesthe county commissioners, *182 upon petition of one or more of the land-owners praying for the establishment of a ditch, to order a survey of the route of the proposed ditch; which survey, with a plat, profile, description of land to be affected, etc., is to be reported to the auditor of the county. Upon receipt of this report, the auditor is required to make an apportionment of the costs of locating and of the labor of constructing the ditch, and give notice of said report and apportionment, the prayer and pendency of the 'petition, and the time set for its hearing, by publication for four weeks in a newspaper published or of general circulation in the county. The act then provides that all persons claiming compensation for land taken, or damages occasioned by the construction of the ditch, shall file their claims therefor with the auditor on or before the day set for hearing the petition, and makes provision for the assessment of such compensation and damages, if any are claimed, by a jury, in the probate court. It also provides that persons failing so to malee their claims withim, the time specified shall be deemed and held to have warned their right to such compensation or damages. Upon hearing of the petition the commissioners have a.discretionary power, in view of all the circumstances of the case, to grant or refuse the prayer of the petition, as may seem to them just and for the public good. The act makes no provision for the service of personal notice upon the land-owners to be affected by the construction of the ditch.
Is this act in conflict with the constitutional provision referred to? That provision guarantees to the public the right to take the land, and to the owner the right to a compensation, to be paid or secured before the land is taken. One of these rights is just as sacred as the other, and neither is more sacred than any other form of right to land, or to compensation therefor. Nothing is better established as law, than that such rights may be affected, and lost to the owner, by a proceeding in rem,, and upon merely constructive notice. The law of all such proceedings rests in the necessity of the case, and in no instance, perhaps, is that necessity more plainly apparent than in the construction of public roads, and other *183 improvements of like nature. Without the aid of some such proceeding, the construction of roads and ditches would be next to impracticable. A similar proceeding is provided, and a like provision as to the waiver of claims is made, in the law for the establishment of roads. (S. & C. 1286, sec. 8.) Some such provision of law seems indispensable. The owner of land necessary to be used for a road or ditch may be absent or unknown. The title may be in dispute. The legal title may be in one, and the equitable title in another. One may have the present estate and another the reversion or remainder. The owner may make a secret conveyance, on purpose to evade the law. Without the power to proceed in some such form against the land itself, the right guaranteed to the public by this provision of the constitution, to take the land for public uses, would be of little avail. In the construction of such improvements, of any considerable length, personal notice, if at all practicable, would be attended with great inconvenience and uncertainty. It was the duty of the legislature to provide some reasonable means for .securing, both to the public and to the owner of land, these rights so guaranteed by the constitution. To require in such cases personal notice to the owners, would, in our judgment, be quite as unreasonable, as to require that owners of lands should, as was said in the case of Miller v. Graham, (17 Ohio St. 1), “ maintain some kind of an agency in the vicinity of the lands, through which they may be informed of proceedings affecting them.” They are presumed to know of the existence of this act, and therefore to have notice that their lands are liable at any time, upon four weeks’ publication of notice to that effect, to be taken for the use of a ditch, and that their non-claim will be taken and held as a waiver of all right to compensation or damages. There is no greater hardship in this implied waiver, after notification beforehand that silence will be taken for consent, than there is in the analogous cases of creditors of a bankrupt or insolvent, or of claimants upon any fund in the hands of a court for distribution, whose fail ure to present their claims is made to work a forfeiture of the same. Nor is the necessity for such implication any the *184 greater in the latter cases than in the former. A principal element in the determination by the commissioners, as to the expediency of constructing a road or ditch, is the amount of its cost, and that amount should, if practicable, be ascertained before the day fixed for the determination. The whole proceeding is substantially in rem. Jurisdiction over the person of the parties is not necessary. The act in question relates to and affects only the remedy, and not the rights of the parties, and is therefore.within the general scope of legislative power. The constitutional provision referred to does not take away that power. It defines and guarantees the right of the party to his land, or to a sure and adequate compensation therefor. The remedy — the proceeding by which that right is to be affected — is still left to legislative discretion. We fail, therefore, to see wherein the act in question violates the constitution.
The injunction will be dissolved and the cause remanded for further proceedings.
Brinkeehoff, C.J., and Scott, J., concurred.
White, J., dissented as to the third proposition of the syllabus.
Dat, J., did not sit in the case.